UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRIC KILKENNY,

                                    Plaintiff,

        -v-

LAW OFFICE OF CUSHNER & GARVEY, L.L.P. ,
TODD S. CUSHNER, TARRYTOWN
MANAGEMENT GROUP, INC., LAWRENCE A.
GARVEY, and JOHN DOES #1 AND 2,

                                    Defendants.

Case No. 08-CV-588 (KMK)

<u>OPINION AND ORDER</u>

<u>Appearances:</u>

Patric Kilkenny
Armonk, New York
*Pro Se Plaintiff*

Lawrence Arthur Garvey, Esq.
The Law Offices of Cushner & Garvey
Tarrytown, New York
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Patric Kilkenny ("Plaintiff), proceeding pro se, brings this action against the Law Office

of Cushner & Garvey, LLP ("C&G"), Todd S. Cushner ("Cushner"), Tarrytown Management

Group, Inc. ("TMG"), Lawrence A. Garvey ("Garvey"), and John Does #1 and 2 (collectively,

"Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et*

*seq.*, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et*

*seq.*, and New York Banking Law § 660 *et seq*.  Defendants move to dismiss all of Plaintiff's

claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons stated herein,

Defendants' motion is granted in part and denied in part.

I. Background

A. Facts

The Court assumes the following facts, as alleged in the Amended Complaint, to be true for purposes of this motion.[1]  Plaintiff was hired by Cushner and Garvey to work for both C&G and TMG on February 6, 2006.  (Am. Compl. ¶¶ 42-43.)[2]  Plaintiff was hired to perform secretarial work, and his job responsibilities included "answering phones [60% of his work], filing, typing, cleaning, making coffee, drafting letters[,] and general office work."  (*Id.* ¶¶ 43, 45.)[3]  Plaintiff's work hours were Monday through Friday from 9:00 a.m. to 5:30 p.m., including a half-hour lunch break.  (*Id.* ¶ 44.)  Plaintiff alleges that he was required to work many hours of overtime starting from the time he commenced working for Defendants (February 2006) until the time his employment was terminated (October 2007), and that his overtime wages have been illegally withheld by Defendants in violation of the FLSA.  (*Id.* ¶¶ 34-35, 46, 55-59.)

Plaintiff also alleges that he was aware of, or forced to participate in, a variety of racketeering activities in which Defendants were engaged.  Specifically, Plaintiff alleges that: (1) he was repeatedly instructed to sign attorneys' names using their notary stamps on legal documents; (2) he was aware of Defendants' improper co-mingling of personal and client funds

---

[1] There are some inconsistencies between the facts alleged in the original Complaint and those alleged in the Amended Complaint that are material for purposes of deciding this Motion. These inconsistencies are discussed in more detail below.

[2] Plaintiff alleges that TMG is a corporate shell and merely the alter ego of individual Defendants Cushner and Garvey.  (Am. Compl. ¶¶ 60-65.)

[3] In Plaintiff's original Complaint, he described his job duties as follows: "Plaintiff was ostensibly hired to organize a disorganized office and to bring it into compliance with the rules and regulations of New York and [f]ederal [c]ourts, and to assist in writing and drafting pleadings and other legal papers."  (Compl. ¶ 50.)  Plaintiff also claimed in his original Complaint that he had successfully handled these responsibilities.  (*Id.* ¶ 56.)

in C&G's Interest On Lawyers Account ("IOLA"); (3) he was instructed to alter legal documents

at the behest of Cushner and Garvey; (4) Cushner and Garvey "implemented [their] various

fraudulent schemes" by funneling money through C&G "into and through" TMG; (4) Cushner

and Garvey made deposits and payments through TMG with funds from the IOLA in furtherance

of their racketeering activities; and (5) Cushner and Garvey used IOLA funds to "transfer,

deposit and otherwise manipulate funds for" transactions in furtherance of their racketeering

activities.  (*Id.* ¶¶ 47-48, 50, 52-54.)

  B. Procedural History

   Plaintiff filed the original Complaint on January 23, 2008.  (Dkt. No. 1.)  On June 2,

2008, Plaintiff filed his Amended Complaint.  (Dkt. No. 12.)  On September 10, 2008,

Defendants filed a Notice of Motion indicating that they were seeking dismissal of a cause of

action that had not been asserted by Plaintiff (Dkt. No. 14), and an Amended Notice of Motion

correcting this error was filed on October 23, 2008, (Dkt. No. 18).  Plaintiff thereafter sought

dismissal of Defendants' motion for failure to comply with Fed. R. Civ. P. 7(b), but the Court

excused Defendants' defective Notice of Motion and accepted their Amended Notice of Motion

by Order dated April 30, 2009.  (Dkt. No. 24.)  Plaintiff requested that the Court dispense with

oral argument on the Motion, and so the Court did not hold oral argument.  (Mem. of Law in

Opp'n to Defs.' Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Pl.'s Mem.") 1.)

II. Discussion

  A. Standard of Review

   "On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's

factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor."  *Gonzalez*

*v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008); *see also Ruotolo v. City of New York*,

3

514 F.3d 184, 188 (2d Cir. 2008) ("We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)).  In adjudicating a Rule 12(b)(6) motion, a district court "'confines its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'"  *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 107 (S.D.N.Y. 2009) (alteration omitted) (quoting *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)).  "The court may . . . consider matters of which judicial notice may be taken, even if the corresponding documents are not attached to or incorporated by reference in the complaint."  *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005); *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (holding that district court properly took judicial notice of public documents filed with the SEC).  However, a court should take judicial notice "to determine what statements [the documents] contain[] . . . not for the truth of the matters asserted."  *Kramer*, 937 F.2d at 774.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration, citations, and internal quotation marks omitted).  Instead, the Supreme Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  If a plaintiff

"ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint

must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining

whether a complaint states a plausible claim for relief will . . . be a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense.  But where

the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled

to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

Finally, "[i]t is well-established that the submissions of a *pro se* litigant must be

construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman*

*v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted).

However, even a pro se party is not exempt from "compliance with relevant rules of procedural

and substantive law." *Id.* at 477.

B. Analysis

1. FLSA Claims[4]

Although Plaintiff claims that he is a covered employee under the FLSA, Defendants

counter that Plaintiff is exempt from the FLSA's overtime provisions and that he therefore is not

entitled to receive any allegedly unpaid overtime wages.  (Defs.' Mem. of Law in Supp. of Their

Mot. Pursuant to Fed. R. Civ. P. 12(b)(6) ("Defs.' Mem.") 7-9.)  The FLSA, which governs

overtime compensation for certain employees, exempts from its coverage "any employee

---

[4] Plaintiff's FLSA claims in this action substantially overlap with Plaintiff's claim for "unpaid wages" in *Kilkenny v. Cushner & Garvey Law Office*, No. 08-CV-1619, which has been consolidated with this action.  Therefore, the Court considers Defendants' motion to dismiss Plaintiff's FLSA claims in this action to apply with equal force to Plaintiff's claim for overtime wages in the consolidated action.

employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. §

213(a)(1). The term "employed in a bona fide administrative capacity," in turn, "mean[s] any

employee: (1) [c]ompensated on a salary basis at a rate of not less than $455 per week . . . (2)

[w]hose primary duty is the performance of office or non-manual work directly related to the

management or general business operations of the employer . . . [,] and (3) [w]hose primary duty

includes the exercise of discretion and independent judgment with respect to matters of

significance." 29 C.F.R. § 541.200(a); *see also Auer v. Robbins*, 519 U.S. 452, 455 (1997)

(discussing salary and duties test); *In re Novartis Wage & Hour Litig.*, 611 F.3d 141, 155-56 (2d

Cir. 2010) (discussing salary and duties test and noting that "the exercise of discretion and

independent judgment" generally includes the ability to formulate and implement management

policies, plan business objectives, independently deviate from standard policies, and exercise

other authority over significant business matters (citing 29 C.F.R. § 541.202(b))); *Coleman-

Edwards v. Simpson*, 330 F. App'x 218, 219-20 (2d Cir. 2009) (summary order) (noting that

exemptions from the FLSA's overtime provisions are "determined by the employee's salary and

duties" and not the job title alone); *Torres v. Gristede's Operating Corp.*, No. 04-CV-3316, 2006

WL 2819730, at *6 (S.D.N.Y. Sept. 29, 2006) (discussing the "duties test" and "salary basis

test," outlined in 29 C.F.R. § 541.200, that employees must satisfy in order to be exempt from

the FLSA's overtime provisions).

"Because the FLSA is a remedial law, [courts] must narrowly construe its exemptions,"

and "the employer invoking the exemption bears the burden of proving that its employees fall

within the exemption." *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d

Cir. 2010) (footnote omitted); *see also Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 92

(2008) ("'[T]he general rule [is] that the application of an exemption under the [FLSA] is a

6

matter of affirmative defense on which the employer has the burden of proof.'" (alterations in original) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974))); *Perkins v. S. New Eng. Tel. Co.*, No. 07-CV-967, 2012 WL 517286, at *3 (D. Conn. Feb. 14, 2012) (noting the Supreme Court's "directive" that FLSA exemptions "are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit" (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 396 (1960))).

In the Amended Complaint, Plaintiff does not indicate whether he received compensation on an hourly or a salaried basis. Plaintiff's job duties, as described in the Amended Complaint, appear to be mostly clerical in nature. (Am. Compl. ¶¶ 43, 45.) Further, the job duties, as described, do not appear to afford a significant degree of discretion or independent judgment, nor do they appear to relate to "the management or general business operations of the employer." (*Id.*) Therefore, taking the allegations in the Amended Complaint as true, it appears that Plaintiff fails to satisfy the duties test.[5] That failure, combined with the fact that Plaintiff's salary cannot

---

[5] Because the phrases "directly related to management policies or general business operations" and "exercise of discretion and independent judgment with respect to matters of significance" are not self-defining, the Secretary of Labor has promulgated interpretive regulations to aid the courts in applying this test. *See Reiseck*, 591 F.3d at 106 (noting that "[a]lthough the Secretary's legislative regulations — those promulgated pursuant to an express grant of authority by Congress, like 29 C.F.R. § 541.2 — have the power to control courts' reading of the law, the Secretary's *interpretive* regulations have only the power to persuade courts" (emphasis in original)).

In 29 C.F.R. § 541.201(a), the Secretary explains that work "directly related to management policies or general business operations" means that the "employee must perform work directly related to assisting with the running or servicing of the business." Examples of such work include "work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities." *Id.* § 541.201(b). The job description

7

be determined from the information given in the Amended Complaint, would appear to

necessarily require the Court to deny Defendants' motion, which is based on the notion that

---

that Plaintiff provides in the Amended Complaint does not satisfy this requirement, as he does
not allege that his work related to the running of the business, but instead that he performed
various secretarial tasks.  (Am. Compl. ¶¶ 43, 45.)

 Regarding the "exercise of discretion and independent judgment with respect to matters
of significance," the Secretary has specified that the phrase "implies that the employee has
authority to make an independent choice, free from immediate direction or supervision," 29
C.F.R. § 541.202(c), and that the following factors should be considered:

> whether the employee has authority to formulate, affect, interpret, or implement
> management policies or operating practices; whether the employee carries out
> major assignments in conducting the operations of the business; whether the
> employee performs work that affects business operations to a substantial degree,
> even if the employee's assignments are related to operation of a particular
> segment of the business; whether the employee has authority to commit the
> employer in matters that have significant financial impact; whether the employee
> has authority to waive or deviate from established policies and procedures
> without prior approval; whether the employee has authority to negotiate and bind
> the company on significant matters; whether the employee provides consultation
> or expert advice to management; whether the employee is involved in planning
> long- or short-term business objectives; whether the employee investigates and
> resolves matters of significance on behalf of management; and whether the
> employee represents the company in handling complaints, arbitrating disputes or
> resolving grievances.

*Id.* § 541.202(b).  The employee must therefore exercise a significant amount of discretion in
carrying out his or her job responsibilities, and this exercise of discretion "must be more than the
use of skill in applying well-established techniques, procedures or specific standards described in
manuals or other sources."  *In re Novartis*, 611 F.3d at 156 (quoting 29 C.F.R. § 541.202(e) and
holding that the duties and authority of sales representatives did not satisfy the requirements for
the administrative employee exemption).  Finally, for an executive or administrative assistant to
satisfy the duties requirements for the administrative exemption, the employee should "without
specific instructions or prescribed procedures, ha[ve] been delegated authority regarding matters
of significance."  29 C.F.R. § 541.203(d).  Plaintiff's job description, as pled in the Amended
Complaint, does not indicate that he exercised this level of discretion, or that he was delegated
decision-making capacity on matters of significance.  To the contrary, he pleads that he "was
hired to perform various secretarial duties as designated by partners."  (Am. Compl. ¶ 43.)

Plaintiff satisfies both the duties test and the salary basis test and thus was not covered by the FLSA's overtime provisions.  In considering the motion to dismiss, the Court is required to accept only Plaintiff's allegations as true.  *See Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) ("[T]he court must take all facts alleged [by plaintiff] in the complaint as true and draw all reasonable inferences in favor of plaintiff." (internal quotation marks omitted)).  Because the availability of the administrative employee exemption is not "unequivocally" clear from the face of the Amended Complaint, the burden of proving an exemption rests with the employer, and this affirmative defense "is improperly presented at the pleading stage."  *Beaulieu v. Vermont*, No. 10-CV-00032, 2010 WL 3632460, at *5-6 (D. Vt. Aug. 5, 2010) (denying motion to dismiss and noting that "[t]he exemption categories delineated by the FLSA are not designed to thwart nascent claims, but rather, are available affirmative defenses to be fleshed out during the discovery process").

However, Defendants argue that the Court should disregard the allegations in the Amended Complaint and focus instead on the facts alleged in the original Complaint.  (Defs.' Mem. 4.)  Specifically, Defendants claim that Plaintiff "has, in response to arguments submitted by [D]efendants in pre-motion letters and [at] the pre-motion conference . . . where[] he was given permission to amend his complaint, reframed his 'facts' in blatant contradiction to [sic] his original complaint in an effort to form a cause of action under a statute that he would otherwise be precluded from seeking relief under; namely, FLSA."  (*Id.* at 4-5.)  They assert that Plaintiff "drastically and blatantly changed his pleadings from his original complaint," and "directly contradicted the essential elements of his FLSA cause of action in order to better mold his job description in an attempt to have it fit an[] FLSA cause of action that at the very least would allow his claim to survive a motion to dismiss."  (*Id.* at 5.)

9

Indeed, the Court notes that Plaintiff's descriptions of his job responsibilities in the original and Amended Complaints are at odds with one another. In the original Complaint, Plaintiff claimed that he "was ostensibly hired to organize a disorganized office and to bring it into compliance with the rules and regulations of New York and [f]ederal [c]ourts, and to assist in writing and drafting pleadings and other legal papers," and he further claims that he successfully satisfied these mandates. (Compl. ¶¶ 50, 52, 56.) Plaintiff also stated that he received a salary of $800.00 per week, and at some time was given a raise to $1,000.00 per week "as a salary." (*Id.* ¶¶ 49-53.) On the other hand, the Amended Complaint omitted any mention of Plaintiff's compensation, and alleges that "Plaintiff was hired to perform office duties, including[] answering phones [60% of his work], filing, typing, cleaning, making coffee, drafting letters[,] and general office work as is customary for a secretarial position." (Am. Compl. ¶ 45.) This apparent discrepancy is even more concerning in light of the discussion between Plaintiff and the Court at a pre-motion conference held on April 18, 2008, where the Court expressed its concern that Plaintiff, who is uniquely qualified to describe his own employment responsibilities and salary, had changed his description of his employment duties. In particular, the Court expressed its skepticism that Plaintiff had, in his own words, merely "embellished" his job description in the original Complaint. (Hr'g Tr. 12:11-16, Apr. 18, 2008.) The Court nonetheless allowed Plaintiff to amend his Complaint, but implored him to "be mindful," and reminded him that he had "an obligation [to be truthful] even [though he was] pro se." (*Id.* at 18:3-4.) The Court also noted that Plaintiff was "much more versed in the law than many pro se[]" litigants, and reminded Plaintiff to "[c]hoose [his] words carefully." (*Id.* at 18:4, 23:4.)

10

There is authority supporting the notion that a court may disregard amended pleadings when they directly contradict facts that have been alleged in prior pleadings.  *See, e.g.*, *Palm Beach Strategic Income, LP v. Salzman, P.C.*, No. 10-CV-261, 2011 WL 1655575, at \*5 (E.D.N.Y. May 2, 2011) (noting that while most courts have held that prior inconsistent pleadings serve as "controvertible, not conclusive admissions," other courts have held "that a district court has no obligation to accept as true an amended complaint's allegations[] if they directly contradict[] the facts set forth in [the] original complaint" (second alteration in original) (internal quotation marks omitted)); *Colliton v. Cravath, Swaine & Moore LLP*, No. 08-CV-0400, 2008 WL 4386764, at \*6 (S.D.N.Y. Sept. 24, 2008) ("Where a plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss and directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true." (alterations and internal quotation marks omitted)); *Wallace v. N.Y.C. Dep't of Corr.*, No. 95-CV-4404, 1996 WL 586797, at \*2 (E.D.N.Y. Oct. 9, 1996) (accepting as true facts alleged in the original complaint where plaintiff alleged directly contradictory facts in his amended complaint); *cf. Streit v. Bushnell*, 424 F. Supp. 2d 633, 639 n.4 (S.D.N.Y. 2006) (considering facts alleged in the amended complaint despite inconsistencies with facts alleged in the original complaint because the modifications at issue did not "entail[] an essential element of plaintiff's cause of action without which plaintiff could not make out a prima facie case," and thus did not have a "dispositive effect").  Here, however, the modifications in the Amended Complaint have a potentially dispositive effect on the Court's ruling on this motion — if the Court accepts the facts alleged in the original Complaint, the Court could find that Plaintiff satisfies the salary basis test as a matter of law, which would get Defendants halfway to the Court granting their motion.  If, on the other hand, the Court

11

disregarded the original Complaint and focused only on the facts alleged in the Amended

Complaint, Plaintiff would not satisfy the salary basis test on the face of his pleadings, and

Defendants motion would necessarily be denied.

Even if the Court were to consider the original Complaint's description of Plaintiff's job

duties and disregard the contradictory description contained in the Amended Complaint,

however, the Court has found little authority that would allow it to consider Plaintiff's weekly

salary, which was contained in the original Complaint but omitted from the Amended

Complaint.  While courts are free to deny leave to amend a complaint if the proposed amended

complaint attempts to omit certain previously-alleged facts without adequate explanation or in

bad faith, *see Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998) (affirming district

court's denial of leave to amend a complaint where plaintiff sought to "erase [] admissions

[made] in [the previous] complaint" (alteration and internal quotation marks omitted)),

*abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), once an

amended pleading is filed, a court may not import information that was contained in the prior

pleading but omitted from the amended pleading, *see Tran v. Alphonse Hotel Corp.*, 281 F.3d

23, 32 (2d Cir. 2002) (affirming district court's decision to disregard plaintiff's admission in a

prior complaint that had been superseded by an amended complaint omitting the admission

(having to do with the plaintiff's weekly hours), and noting that "[a] statement in a withdrawn

complaint that is superseded by an amended complaint without the statement is no longer a

conclusive judicial admission"), *overruled on other grounds by Slayton v. Am. Express Co.*, 460

F.3d 215 (2d Cir. 2006); *but see In re Enron Corp.*, 370 B.R. 583, 597-99 (Bankr. S.D.N.Y.

2007) (considering allegations made in a prior pleading, which were omitted from the amended

pleading, because claimant had not provided a legitimate explanation for the omission).

Accordingly, the Court will not consider Plaintiff's salary, which he referred to in the original Complaint but not the Amended Complaint, as a conclusive admission for purposes of Defendants' motion to dismiss.  Plaintiff's FLSA claims, therefore, survive Defendants' motion, but only by the thinnest of margins.  The Court takes this opportunity to note that although Plaintiff is proceeding pro se, he has demonstrated a working understanding of the law throughout these proceedings (and the other lawsuits he has filed in other jurisdictions), and it is unlikely that these alterations in his pleadings were mere coincidence.  The Court reminds Plaintiff now, as it did before, that even pro se parties have an obligation to act honestly and in good faith when conducting business before the courts, and if they do not, they risk the imposition of sanctions.  *See Colliton*, 2008 WL 4386764, at *13-15 (imposing sanctions on pro se plaintiff who "filed an amended complaint consisting of self-contradictory allegations without legal or factual support" and harassed and threatened opposing counsel).  The Court also notes, of course, that Plaintiff someday will have to substantiate the claims in his Amended Complaint (and answer for those made in his original Complaint).

### 2. RICO Claims

Plaintiff claims, in his fourth through seventh causes of action, that Defendants conspired to engage, and did engage in, racketeering activities, including mail and wire fraud, and which incorporated a scheme of underpaying Plaintiff, in violation of 18 U.S.C. §§ 1962(a)-(d) ("RICO").  (Am. Compl. ¶¶ 73-104.)  To bring a private claim under RICO, a plaintiff must establish both that a defendant violated RICO, and that such violation has caused an injury to the plaintiff's business or property.  *See Hemi Grp., LLC v. City of New York*, 130 S. Ct. 983, 987 (2010) ("RICO provides a private cause of action for '[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter [the criminal RICO

13

provisions].'" (first alteration in original) (quoting 18 U.S.C. § 1964(c))); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) ("RICO provides a private right of action for treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise's affairs through a pattern of acts indictable [under RICO]."). To establish a substantive RICO claim under 18 U.S.C. § 1962(c), Plaintiff must demonstrate that: "(1) defendants through the commission of two or more predicate acts; (2) constituting a pattern[;] (3) of racketeering activity[;] (4) directly or indirectly invested in, or maintained an interest in, or participated in[;] (5) an enterprise; (6) the activities of which affect interstate or foreign commerce." *Nat'l Grp. for Commc'n & Computers Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 269-70 (S.D.N.Y. 2006) (internal quotation marks omitted); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 454 (2006) (noting that § 1962(c) makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity" (internal quotation marks omitted)). To establish a RICO conspiracy under 18 U.S.C. § 1962(d), "a plaintiff must show a conspiracy to commit a substantive RICO violation." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citing 18 U.S.C. § 1962(d)).[6] With respect to the pattern of racketeering activity that Plaintiff must demonstrate, the acts that constitute the pattern

---

[6] Although the Amended Complaint appears to allege violations under 18 U.S.C. §§ 1962(a) and (b), the allegations on the face of the Amended Complaint do not appear to relate to the investment of racketeering income to acquire or maintain an interest in an enterprise, *see* 18 U.S.C. § 1962(a), or to any injury Plaintiff suffered as a result of the acquisition or control of an enterprise, *see* 18 U.S.C. § 1962(b). Therefore, the Court construes the Amended Complaint as alleging violations only under 18 U.S.C. §§ 1962(c) and (d). In any event, these causes of action would fail for the same reasons the claims under §§ 1962(c) and (d) fail, as explained below.

14

"must be related, and either amount to or pose a threat of continuing criminal activity." *Id.*

(alteration and internal quotation marks omitted).  This "so-called 'continuity' requirement can

be satisfied either by showing a 'closed-ended' pattern — a series of related predicate acts

extending over a substantial period of time — or by demonstrating an 'open-ended' pattern of

racketeering activity that poses a threat of continuing criminal conduct beyond the period during

which the predicate acts were performed."  *Id.* (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S.

229, 241 (1989)).

       Plaintiff's racketeering allegations are closely tied to his allegations that Defendants

illegally withheld his overtime pay.  Defendants therefore argue, and Plaintiff appears to

concede, that there is no threat of ongoing criminal activity that could harm Plaintiff, whose

employment was terminated in October 2007, and thus Plaintiff must pursue his RICO claims

under a closed-ended continuity theory.  (Pl.'s Mem. 12-13.)[7]  The Court agrees.  Furthermore, it

is not Plaintiff's employment, but Defendants' conduct that is the issue.  Open-ended continuity

is satisfied when there is a threat of continuing criminal activity beyond the commission of the

---

    [7] To the extent that Plaintiff alleges that Defendants' racketeering activities involved
"fraudulent schemes" that were implemented through the co-mingling of funds in their IOLA,
Plaintiff does not have standing to assert such claims, as he has not alleged any injury to him
from those unidentified activities.  *See Hemi Group*, 130 S. Ct. at 989 ("[T]o state a claim under
civil RICO, the plaintiff is required to show that a RICO predicate offense not only was a 'but
for' cause of his injury, but was the proximate cause as well," which requires "some direct
relation between the injury asserted and the injurious conduct alleged." (internal quotation marks
omitted)); *see also Ello v. Singh*, 531 F. Supp. 2d 552, 574 (S.D.N.Y. 2007) (noting that to have
standing to assert a civil RICO claim, a plaintiff must demonstrate: "(1) a violation of Section
1962; (2) injury to business or property; and (3) causation of the injury by the violation"
(internal quotation marks omitted)); *Jerome M. Sobel & Co. v. Fleck*, No. 03-CV-1041, 2003
WL 22839799, at *3 (S.D.N.Y. Dec. 1, 2003) (explaining that to state a RICO claim, a plaintiff
is required to prove that he was injured in his business or property by the violation), *adopted by*
2004 WL 48877 (S.D.N.Y. Jan. 8, 2004).

alleged predicate acts, such as when the enterprise is inherently unlawful.  *See Spool*, 520 F.3d at 185 (noting that the threat of continuing criminal activity "is generally presumed when the enterprise's business is primarily or inherently unlawful").  In fact, when the enterprise is a legitimate business, there is no presumption of open-ended continuity — and Plaintiff has failed to make any allegations to raise such an inference.  *See id.* ("When the enterprise primarily conducts a legitimate business, however, no presumption of a continued threat arises . . . [and] there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." (internal quotation marks omitted)); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Archway Ins. Servs. LLC*, No. 11-CV-1134, 2012 WL 1142285, at *5 (S.D.N.Y. Mar. 23, 2012) (same); *First Capital Asset Mgmt., Inc. v. Brickelbush, Inc.*, 150 F. Supp. 2d 624, 633-34 (S.D.N.Y. 2001) (same), *aff'd sub nom. First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004).

"Closed-ended continuity is primarily a temporal concept," and "[s]ince the Supreme Court decided  *H.J. Inc.* [*v. Northwestern Bell Telephone Co.*], [the Second Circuit has] never held a period of less than two years to constitute a substantial period of time."  *Spool*, 520 F.3d at 184 (internal quotation marks omitted); *see also National Union Fire Insurance Co.*, 2012 WL 1142285, at *4 (noting that the Second Circuit has "never held a period of less than two years to constitute a 'substantial period of time'" (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999))); *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 301 (S.D.N.Y. 2011) (holding that plaintiffs "have not sufficiently alleged close-ended continuity, because they have not adequately pled predicate acts over a period of at least two years, the amount of time the Second Circuit has generally found necessary to establish

close-ended continuity").  Further, "[a]lthough [the Second Circuit has] not viewed two years as a bright-line requirement, it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity, particularly where" the activities alleged involve a small number of participants and do not involve a "complex, multi-faceted conspiracy."  *Spool*, 520 F.3d at 184 (internal quotation marks omitted); *see also Rayo v. Vitale*, No. 09-CV-846, 2011 WL 5117726, at *4 (E.D.N.Y. Sept. 23, 2011) (finding that nine months "cannot be considered a substantial period of time" and noting that it is rare for conduct persisting for less than two years to establish closed-end continuity (internal quotation marks omitted)).  Here, Plaintiff alleges that the racketeering activities took place over a period of only sixteen months, from May 2006 to October 2007 (Pl.'s Mem. 13), and that the illegal activities were perpetrated by a small number of individuals and entities.  Despite Plaintiff's protestations, therefore, the Court finds that he has not established a RICO claim based on closed-ended continuity.[8]

Moreover, and despite Plaintiff's arguments to the contrary (Pl.'s Mem. 14-16), "[a]llegations of mail or wire fraud [made as part of a civil RICO claim] must be made with the particularity required by Federal Rule of Civil Procedure 9(b)."  *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 446 (2d Cir. 2008) (alteration omitted) (internal quotation marks omitted), *rev'd on other grounds by Hemi Grp., LLC v. City of New York*, 130 S. Ct. 983 (2010); *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993) (noting that "allegations of predicate mail and wire fraud acts [alleged to be RICO predicate acts] should

---

[8] Even assuming the alleged activities occurred from the time Plaintiff began working in February 2006 and continued until his termination in October 2007, nineteen months would still be an insufficient period of time to establish close-ended continuity.  *See Wiltshire v. Dhanraj*, 421 F. Supp. 2d 544, 550 (E.D.N.Y. 2005) ("The Amended Complaint's nineteen-month period of predicate activity is [] insufficient under Second Circuit precedent to establish closed-ended continuity.").

state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent"); *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992) (noting in civil RICO case that allegations of mail fraud must satisfy the heightened pleading requirements of Rule 9(b)).  Here, Plaintiff's vague references to "fraudulent schemes orchestrated by" Defendants, "racketeering activities," "mail fraud," and "wire fraud," are conclusory, completely devoid of any detailed information, and therefore do not satisfy the heightened pleading standards of Rule 9(b).  *See Spool*, 520 F.3d at 185 (holding that complaint did not meet 9(b) pleading requirements where plaintiff did not specify the individuals involved and did not allege any specific fraudulent communications in relation to predicate mail and wire fraud acts); *Grimes*, 785 F. Supp. 2d at 301 ("Plaintiffs' conclusory allegation that Defendants had a pattern of using the mail and wires to commit fraudulent acts . . . without any specifics, fails to meet the particularity requirements of Rule 9(b), and simply is insufficient to satisfy Plaintiffs' pleading burden.").[9]

---

[9] Plaintiff also claims that he does not need to satisfy Rule 9(b)'s heightened pleading requirement when the mailings or wire transmissions themselves are not false or misleading (Pl.'s Mem. 15), and relies on *Jerome M. Sobel & Co. v. Fleck*, 2003 WL 22839799, for this proposition.  However, *Sobel* is distinguishable from the instant case.  In *Sobel*, the defendants did not contest that the pleadings established the existence of a scheme to defraud, but challenged the sufficiency of plaintiff's mail and wire fraud allegations.  *Id.* at *4.  In order to establish mail and wire fraud, Plaintiff was relying on mailings that were not themselves fraudulent, but which were used in furtherance of the alleged master plan to defraud.  *Id.* at *5.  The court found that where the communications do not *themselves* contain false or misleading information, "a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications, is sufficient to satisfy Rule 9(b)."  *Id.* (internal quotation marks omitted).  However, where as here, a "plaintiff claims that specific statements or mailings were themselves fraudulent, i.e., themselves contained false or misleading information, the complaint should specify the fraud involved, identify the parties responsible for the fraud, and where and when the fraud occurred."  *Id.* (internal quotation marks omitted).  Therefore, because Plaintiff alleges that the mailings and wire transfers *were themselves* fraudulent or misleading (Am. Compl. ¶¶ 47-48, 50-54), he cannot rely on *Sobel* to lessen the pleading requirements of Rule 9(b).

Finally, generally "a cause of action does not accrue under RICO until the amount of damages becomes clear and definite," *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003), and as Defendants point out, the Amended Complaint does not allege a definite amount of damages, but merely states that "Plaintiff has suffered damages to be determined at trial, as the full extent of the fraud perpetrated by [Defendants] has yet to be determined." (Am. Compl. ¶¶ 80, 88, 96, 104; Defs.' Mem. 12.) Moreover, the only direct injury which Plaintiff alleges in the Amended Complaint is Defendants' alleged failure to pay his overtime wages. (Am. Compl. ¶¶ 34, 51, 79, 87, 95, 103.) Because Plaintiff can pursue his claim for the payment of these wages through his FLSA claim, that alleged injury cannot form the basis for a damages claim under RICO. *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994) (explaining that a plaintiff can only "pursue the RICO treble damages remedy after his contractual rights to payment have been frustrated"); *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 238 (E.D.N.Y. 2010) (holding that plaintiff could not pursue RICO claims where it had "contractual and other legal remedies . . . that it could pursue" to seek the damages claimed in the action). Furthermore, because Plaintiff has failed to plausibly state a substantive RICO claim, he also, therefore, has failed to state a RICO conspiracy claim. *See First Capital Asset Management*, 385 F.3d at 163 (affirming district court's dismissal of RICO conspiracy claims "because [] RICO conspiracy claims are entirely dependent on the[] substantive RICO claims," which had been dismissed); *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 525 n.13 (E.D.N.Y. 2011) (holding that because plaintiffs lacked standing to bring a substantive RICO claim, their RICO conspiracy claim must also fail "because to establish a conspiracy violation under § 1962(d), a plaintiff first must adequately state a [substantive RICO claim]"); *Citadel Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 156

(S.D.N.Y. 2000) ("[A] RICO conspiracy claim cannot stand where, as here, the elements of the substantive RICO provisions are not met." (citing *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1062-63 (2d Cir. 1996))).  For all of these reasons, Plaintiff's RICO claims are dismissed with prejudice.

### 3. State Law Claims

In his eighth cause of action, Plaintiff brings a claim against all Defendants for violations of New York Banking Law §§ 96-d, 660, and 674.  (Am. Compl. ¶¶ 105-09.)  It is unclear to the Court how any of the cited sections of the New York Banking Law relate to any of Plaintiff's allegations in this action, or how these sections might afford Plaintiff relief.  For example, § 96-d, titled "Banking development districts," establishes a program "the purpose of which is to encourage the establishment of bank branches in geographic locations where there is a demonstrated need for banking services."  N.Y. Banking Law § 96-d(1).  Section 660 makes it a misdemeanor for banking officials to issue certain prohibited loans, and to conceal information involving those loans.  *Id.* § 660.  Finally, § 674 establishes a presumption of knowledge on the part of corporate directors, under certain conditions, of misdeeds carried out by their corporations.  *Id.* § 674.  Even considering Plaintiff's pro se status, the Court is at a loss as to how these provisions relate to any of Plaintiff's allegations, and, indeed, it is unclear whether Plaintiff even has standing to enforce these provisions.  *See Louros v. Cyr*, 175 F. Supp. 2d 497, 517-18 (S.D.N.Y. 2001) (casting doubt on whether plaintiff had standing to assert causes of action under other sections of the New York Banking Law).  Because Plaintiff has already had an opportunity to amend his pleadings once, his state law claims under the New York Banking Law are dismissed with prejudice.  *See Tamar v. Mind C.T.I., Ltd.*, 723 F. Supp. 2d 546, 554 (S.D.N.Y. 2010) (noting that "[l]eave to amend is appropriately denied where the plaintiff has

already had an opportunity to re-plead after specific warnings as to a complaint's deficiencies");

*Kelter v. Apex Equity Options Fund, LP,* No. 08-CV-2911, 2009 WL 2599607, at *10 (S.D.N.Y.

Aug. 24, 2009) (same); *see also Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.

1993) (noting that it is within the discretion of district courts to deny leave to amend where

granting leave would be unproductive).

<u>III. Conclusion</u>

For the reasons stated herein, Defendants' motion is granted in part and denied in part.

The RICO claims and the state law claims are dismissed with prejudice.  The Clerk of the Court

is respectfully directed to terminate the pending motion.  (Dkt. No. 18.)


SO ORDERED.

Dated:        White Plains, New York
              May   , 2012

                                              KENNETH M. KARAS
                                              UNITED STATES DISTRICT JUDGE

21

<u>Service List (by Mail):</u>

Patric Kilkenny
60 Cox Avenue
Armonk, NY 10504
(914) 882-6164
*Pro Se Plaintiff*

Lawrence Arthur Garvey, Esq.
The Law Offices of Cushner and Garvey
155 White Plains Road, Suite 207
Tarrytown, NY 10591
(914) 524-9400
lgarvey@cushnergarvey.com
*Counsel for Defendants*